UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

FRANK MERCADO, Individually          :
and as administrator of
the Estate of David Mercado,         :
et al.,                                      08 Civ. 2855 (BSJ)(HBP)
                                     :
               Plaintiffs,
                                     :   OPINION
     -against-                           AND ORDER
                                     :
THE CITY OF NEW YORK, et al.,
                                     :
               Defendants.
                                     :
---------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          By notice of motion dated November 20, 2009 (Docket

Item 61), plaintiffs, Frank Mercado, individually and as adminis-

trator of the Estate of David Mercado, and Evelyn Mercado, move

for an Order (a) disqualifying Corporation Counsel of the City of

New York ("Corporation Counsel") and Heidell, Pittoni, Murphy &

Bach, LLP ("HPMB") from representing defendants Patricia Jones,

Ronald Goldbourne, Simflex Nyame, Prison Health Services, Inc.

("PHS"), and the City of New York ("the City")(collectively

"Defendants") and (b) granting any further relief that this Court

deems just and proper.  For the reasons set forth below, the

motion is granted in part and denied in part.

II.  <u>Background</u>

      This is a civil rights action in which plaintiffs seek damages under 42 U.S.C. § 1983, the 14th and 4th amendments to the Constitution, and the laws and constitution of New York State.  Plaintiffs claim that employees of the New York City Department of Correction and Prison Health Services, while acting under color of law, were deliberately indifferent to the serious medical needs of David Mercado resulting in Mercado's suicide (Complaint, dated March 18, 2008 (Docket Item 1),("Compl.") ¶¶ 1, 2).

      On December 18, 2007, Mercado was arraigned in Queens County Criminal Court where the Honorable Gene Lopez, New York City Criminal Court Judge, set bail at $2500 and ordered a suicide watch (Compl. ¶ 21; Transcript of Mercado's Arraignment, attached to Declaration of Andrew Stoll, dated November 20, 2009, ("Stoll Decl.") as Ex. 1).  Mercado did not post bail and was remanded to Rikers Island on December 19, 2007 where he was examined by Dr. Yungdo Park and referred to defendant Jones, chief of the Mental Health Unit, for evaluation regarding any "suicidal ideation" (Dr. Park Mental Health Referral, dated December 19, 2007, attached to Stoll Decl. as Ex. 6).  Jones testified that she assigned Mercado's mental health evaluation to

2

defendant Nyame and informed him of Mercado's court-ordered
suicide watch (Deposition of Patricia Jones at 132:3-12, dated
September 29, 2009, attached to Stoll Decl. as Ex. 13 ("Jones
Dep.")).  Nyame, however, claims that he was not told of this
court-ordered suicide watch, nor was he given the corresponding
paperwork (Deposition of Simflex Nyame at 65:4-20, dated August
6, 2009, attached to Stoll Decl. as Ex. 7 ("Nyame Dep.")).  Upon
evaluation, Nyame concluded that Mercado's suicide watch should
be discontinued (Transfer Form, dated December 19, 2007, attached
to Stoll Decl. as Ex. 12).  Nyame testified that he gave this
evaluation to Jones with the belief that she would secure the
countersignature of a psychiatrist; Jones, however, did not do so
(Nyame Dep. at 11:5-12:14).

        After returning to the general prison population,
correction officers observed Mercado "showing signs of depres-
sion, [and] radical changes in his behavior" and referred him
back to the Mental Health Unit (Investigations Division Report,
attached to Stoll Decl. as Ex. 29).  Defendant Goldbourne met
with Mercado on this second visit.  Goldbourne claims to have
given Mercado's referral to Jones, who stated she would schedule
an appointment for Mercado the following day (Interdepartmental
Memorandum from Goldbourne to Warden G. McLaughlin, dated Decem-
ber 20, 2007, attached to Stoll Decl. as Ex. 30).  Jones' recol-

lection of Mercado's second visit to the Mental Health Unit is
materially different.  Jones testified that she was not present
in the Mental Health Unit when Mercado arrived for the second
time, and that Goldbourne had sent him back to his dorm for
having a bad attitude (Jones Dep. at 172:2-173:19).  The follow-
ing morning, Mercado was found hanging in a bathroom (Final
Report of the New York State Commission of Correction, dated
December 19, 2008, attached to Stoll Decl. as Ex. 22, ¶ 27).  He
was taken to Elmhurst Hospital where he died on December 30, 2007
(Compl. ¶ 23).  Following his death, both Nyame and Jones were
disciplined by PHS for their handling of Mercado's care (Simflex
Nyame Review, dated January 4, 2008, attached to Stoll Decl. as
Ex. 19; Patricia Jones Review, dated January 4, 2008, attached to
Stoll Decl. as Ex. 20).

          Corporation Counsel, with HPMB of counsel, originally
represented all defendants.  Due to the defendants' contradictory
recollections of events, defense counsel determined that HPMB
would no longer represent Jones, who would be represented by
Corporation Counsel directly (Defendants' Memorandum of Law in
Opposition to Plaintiff's Motion to Disqualify Heidell, Pittoni,
Murphy & Bach, LLP as Counsel, dated January 11, 2010 (Docket
Item 73), ("Def's Mem. in Opp.") at 12-13).  Corporation Counsel
remains the "overall legal representative of all the instant

defendants" (Amended Memorandum of Law in Opposition to Motion to Disqualify New York City Corporation Counsel as Counsel, dated January 11, 2010 (Docket Item 78), ("Def's Am. Mem.") at 2-3).

Plaintiffs move to disqualify both Corporation Counsel and HPMB from their representation of Jones, Goldbourne, Nyame, PHS and the City on the ground that their joint representation constitutes a conflict of interest. Specifically, plaintiffs argue that these defendants have contradictory defenses, which they have not agreed to waive, and that joint representation will deprive the individual defendants of personal defenses they could otherwise assert (Pl's Mem. at 17-24). Plaintiffs further argue that, if I find there is a conflict of interest between Jones and the other defendants, both Corporation Counsel and HPMB should be disqualified from representing the City, Nyame, Goldbourne, and PHS based on their prior representation of Jones (Pl's Mem. at 25).

Defendants maintain that there is no conflict in their joint representation because they will each assert that no defendant acted with deliberate indifference towards Mercado (Def's Mem. in Opp. at 17-18). They further argue that any conflict can be waived (Def's Mem. in Opp. at 1-2).

III.  <u>Analysis</u>

    A.  <u>Legal Standard</u>

       A motion to disqualify is "committed to the discretion of the District Court." <u>Cole Mechanical Corp. v. National Grange Mutual Insurance Co.</u>, 06 Civ. 2875 (LAK)(HBP), 2007 WL 2593000 2007 at *4 ( September 7, 2007) (Pitman, M.J.), <u>citing</u> <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990).  Because disqualification so seriously affects a client's right to select his or her own counsel, "such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint." <u>Glueck v. Jonathan Logan, Inc.</u>, 653 F.2d 746, 748 (2d Cir. 1981), <u>citing</u> <u>Armstrong v. McAlpin</u>, 625 F.2d 433, 444-46 (2d Cir. 1980)(<u>en banc</u>), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>and</u> <u>remanded</u>, 449 U.S. 1106 (1981); <u>Board of Ed. v. Nyquist</u>, 590 F.2d 1241, 1246 (2d Cir. 1979).  In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny.  <u>See</u> <u>Correspondent Servs. Corp. v. J.V.W. Inv., Ltd.</u>, 99 Civ. 8934 (RWS), 2000 WL 1174980 at *14 (S.D.N.Y. Aug. 18, 2000) (Sweet, D.J.), <u>citing</u> <u>Lamborn v. Dittmer</u>, 873 F.2d 522, 531 (2d Cir. 1989); <u>Decora Inc. v. DW Wallcovering, Inc.</u>, 899 F. Supp. 132, 135 n.2 (S.D.N.Y. 1995)

(Koeltl, D.J.).  Courts are also reluctant to grant motions to disqualify because they inevitably result in delay and added expense.  Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (disqualification motions "inevitably cause delay"); D.R.T., Inc. v. Universal City Studios, Inc., 02 Civ. 0958 (BSJ)(JCF), 2003 WL 1948798 at *2 (S.D.N.Y. April 23, 2003) (Francis, M.J.) (motions to disqualify "cause undue delay [and] add expense").  For all these reasons, "the Second Circuit requires a high standard of proof on the part of the party seeking to disqualify an opposing party's counsel . . . ." Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (Kram, D.J.), citing Gov't of India v. Cook Indus., 569 F.2d 737, 739 (2d Cir. 1978); accord Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006) (Katz, M.J.); Evans v. Artek Sys. Corp., supra, 715 F.2d 788 at 791 (same); Paramount Commc'n, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) (Sweet, D.J.) (same).[1]

It is the duty of the Court "to preserve, to the greatest extent possible, both the individual's right to be

---

[1]Plaintiffs argue that this burden shifts to the non-moving party in cases of concurrent representation (Pl's Mem. at 15). In this case, I find the evidence is so clear, that the result would be the same regardless of who had the burden of proof. Thus, I need not reach the issue.

represented by counsel of his or her choice and the public's
interest in maintaining the highest standards of professional
conduct and the scrupulous administration of justice." Hull v.
Celanese Corp., 513 F.2d 568, 569 (2d Cir. 1975). "Although
disqualification motions within the Second Circuit often look to
state disciplinary rules for guidance, 'such rules merely provide
general guidance and not every violation of a disciplinary rule
will necessarily lead to disqualification.'" Solow v. Conseco,
Inc., 06 Civ. 5988 (BSJ)(THK), 2007 WL 1599151 at *3 (S.D.N.Y.
June 4, 2007) (Katz, M.J.), quoting Hempstead Video, Inc. v. Inc.
Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).  It
should be noted that other circuits have shifted from a focus on
trial taint to emphasizing the enforcement of ethical obliga-
tions, "squarely reject[ing] this hands-off approach in which
ethical rules 'guide' whether counsel's presence will 'taint' a
proceeding, holding instead that a '[d]istrict [c]ourt is obliged
to take measures against unethical conduct occurring in connec-
tion with any proceeding before it.'" In re American Airlines,
Inc., 972 F.2d 605, 611 (5th Cir. 1992), quoting Woods v.
Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1976) (empha-
sis added); Musicus v. Westinghouse Elec. Corp., 621 F.2d 742,
744 (5th Cir. 1980); E.F. Hutton & Co. v. Brown, 305 F. Supp.
371, 376-77 (S.D. Tex. 1969).  Under both models, there are no

hard and fast rules for striking the balance between enforcement of ethical rules and the preservation of client rights.  Instead, "the conclusion in a particular case can be reached only after a painstaking analysis of the facts and precise application of precedent."  Board of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979), citing Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F.2d 225, 227 (2d Cir. 1977), quoting United States v. Standard Oil Co., 136 F. Supp. 345, 367 (S.D.N.Y. 1955) (Kaufman, D.J.).

B.  Conflict of Interest

Plaintiffs contend that the joint representation of several of the defendants by HPMB and Corporation Counsel violates Rule 1.7 of the New York Rules of Professional Conduct, which provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
> > (1) the representation will involve the lawyer in representing differing interests . . .
>
> *        *        *
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the asser-tion of a claim by one client against another client represented by the lawyer in the same liti-gation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.  22 N.Y.C.R.R. § 1200.1.7 (2009).

1.  Alleged Conflicts between the
    City and Individual Defendants

Relying on Dunton v. County of Suffolk, 729 F.2d 903 (2d Cir. 1984), plaintiffs argue that Rule 1.7 is violated here because the interests of the City and the individual defendants, most notably Jones and Goldbourne, are adverse.  They claim that because the City and its employees can reduce their liability by placing blame on each other, they cannot be jointly defended.

Dunton held that "the interests of a municipality and its employees as defendants in a section 1983 action are in conflict" because the municipality may avoid liability by claim-ing the employee acted outside the scope of his or her employ-ment, while the employee may avoid liability by proving the opposite.  Dunton v. County of Suffolk, supra, 729 F.2d at 907. Subsequent decisions have been careful to point out that joint

10

employee/municipality representation is not a per se conflict. See e.g. Ross v. United States, 910 F.2d 1422, 1432 (7th Cir. 1990). Instead, a "case-by-case determination is required." Patterson v. Balsamico, 440 F.3d 104, 114 (2d Cir. 2006).

In the present case, there appears to be no issue that the relevant conduct occurred within the scope of the defendants' duties (Def's Mem. in Opp. at 24). Nevertheless, plaintiffs argue that a conflict exists between the City, PHS and their employees because New York General Municipal Law 50-k, as well as the contract between PHS and the City, permits but does not require the City to defend and indemnify its employees and the employees of PHS (Pl's Mem. at 18-21). Defendants assert that, as a practical matter, it would not be in the City's interest to refuse to indemnify its employees or otherwise place blame on them because this would dissuade others from municipal employment (Def's Mem. in Opp. at 20; Def's Am. Mem. at 9). Defendants' argument is persuasive. At most, plaintiffs' allegations, if proven, may establish deliberate indifference; there does not appear to be any evidence of intentional wanton misconduct that might result in the City's refusing to defend or indemnify a defendant.[2]

---

[2] Plaintiffs further claim that Jones' right to counsel of

(continued...)

Plaintiffs also contend that the City has an interest in arguing that, if there was any deficiency in Mercado's care, it was caused by Jones' independent acts (Pl's Mem. at 23).  By coloring Mercado's death as a product of medical malpractice, rather than deliberate indifference, the City may avoid paying attorney's fees and damages for the loss of enjoyment of life (Pl's Mem. at 23).  See Banks ex. rel. Banks v. Yokemick, 177 F. Supp. 2d 239, 249-50 (S.D.N.Y. 2001) (Marrero, D.J.) (in a wrongful death case "the interests the state law seeks to promote are principally the financial needs [of] the decedent's estate and its intended beneficiaries.  These values do not encompass the whole expanse of intangible, more social and individual interests, such as enjoyment of life, that inherently derive from the person of the victim and that § 1983 protects from unlawful deprivation").  This argument is not persuasive; while it may be the case that dismissal of the Section 1983 claim would allow the City to avoid some fees and damages, the City would likely still

---

[2] (...continued)
her own choosing is entitled to less weight in this case because Jones was, effectively, assigned counsel and did not really "choose" counsel (Pl's Mem. at 23).  Although I agree that this factor diminishes the weight to be accorded to Jones' right to counsel of her choosing, it does not render the factor meaningless.  Although Jones did not have free rein to retain any counsel she preferred, she is under no obligation to accept Corporation Counsel as her attorney, and the fact that she has agreed to accept Corporation Counsel is, effectively, a choice.

have to indemnify any malpractice judgement against Jones (Agree-
ment to Provide Operations Services Between Prison Health Ser-
vices and PHS Medical Services, attached to Stoll Decl. as Ex.
25, at 14).  The interests of the City, PHS and its employees are
therefore coincident in this regard.  Likewise, the reputational
damage that Jones and Goldbourne would suffer in the event of a
judgement would, in fact, be shared by all defendants if found
liable, and therefore does not place them in conflict (Pl's Mem.
at 18-19).

Plaintiffs next argue that the individual defendants
may rely on Monell v. Dep't of Social Servs., 436 U.S. 658, 690-
91 (1978), to defend themselves to the detriment of the City and
PHS.  Specifically, plaintiffs argue that the individual defen-
dants may assert that their actions resulted from deficient City
policies and/or the failure of the City to train employees
regarding their duties.

In Monell, the Court held that "local governments . . .
may be sued [under Section 1983] for constitutional deprivations
visited pursuant to governmental 'custom' even though such custom
has not received formal approval through the body's official
decisonmaking channels."  Monell v. Dep't of Social Servs.,
supra, 436 U.S. at 690-91; see also Walker v. City of New York,
974 F.2d 293, 297-98 (2d Cir. 1992) (establishing a three-prong

test for demonstrating deliberate indifference based on a munici-
pality's failure to train).  Plaintiffs contend that they have a
viable Monell claim, especially in light of policy and training
concerns expressed by Jones (Jones Dep. at 33:17-34:3; 41:20-25;
42:7-20; 53:14-54:22; 82:11-85:24).  However, the existence of a
viable Monell claim against the City would not necessarily
exonerate the individual defendants.  Although an individual
Section 1983 defendant may, under certain circumstances, enjoy a
defense of qualified immunity, Soares v. State of Conn., 8 F.3d
917, 920 (2d Cir. 1993), quoting Finnegan v. Fountain, 915 F.2d
817, 823 (2d Cir. 1990), I am not aware of any principal of law
holding that an individual Section 1983 defendant is ipso facto
entitled to a qualified immunity defense merely because he acted
pursuant to a custom or policy that was itself unconstitutional.
Thus, plaintiffs' assertion of both a Monell claim and individual
Section 1983 claims does not necessarily create a conflict
between the individual and the City.

        Plaintiffs also argue that defense counsel's failure to
schedule Jones' deposition in a timely manner is evidence of a
conflict between her, the City and PHS (Pl's Mem. at 24).  On
July 15, 2009 I ordered that "[n]o later than August 3, 2009,
counsel for defendants is to provide counsel for plaintiffs with
firm dates for the outstanding party depositions" (Docket Item

14

53).  Plaintiffs argue that defense counsel delayed Jones'
deposition in an effort to conceal her allegations against the
City and PHS, while leaving her open to sanctions pursuant to
Federal Rule of Civil Procedure 37(b)(2)(Pl's Mem. at 24).  This
argument fails both on the ground that it attributes an un-
founded, nefarious intent to the municipal defendants, and on the
ground that it erroneously assumes that sanctions against one co-
defendant would work to the benefit of another.  Moreover, no
sanctions were ever imposed and, because Jones has now been
deposed, there appears to be no reasonable prospect of sanctions.

        2.   Conflicts Among the
             Individual Defendants

        Although the putative conflicts between the individual
defendants and the City do not require disqualification, there
are several personal defenses available to individual defendants
which work to the detriment of others.  These defenses do require
that the individual defendants either waive the right to assert
the defenses, that Corporation Counsel be disqualified from
representing Jones, or that Corporation Counsel relinquish all
control and oversight of the representation of the defendants
other than Jones.

                            15

First, Jones testified that she provided Nyame with information regarding Mercado's court-ordered suicide watch (Jones Dep. at 132:3-12). Nyame denies that he was provided this information and claims that, had the information been given to him, it would have affected his initial evaluation of Mercado (Nyame Dep. at 65:4-20; 68:9-69:3). Nyame also claims that he gave Jones his evaluation discontinuing Mercado's suicide watch with the expectation that she would obtain the countersignature of a psychiatrist or psychologist, which Jones did not do (Nyame Dep. at 11:5-12:20). The fact that PHS faulted and disciplined both Nyame and Jones for their failure to obtain the appropriate approval before discontinuing Mercado's suicide watch suggests that neither party's version can be dismissed as baseless.

Whether either Jones' or Nyame's version of the events rises to the level of deliberate indifference is a matter for another day. Nevertheless, the fact that Jones' version tends to exonerate herself and inculpate Nyame, while Nyame's version tends to exonerate himself and inculpate Jones creates a clear conflict of interests. Unless both Jones and Nyame knowingly waive their rights to assert these contradictory defenses, Corporation Counsel cannot represent Jones while still overseeing and participating in the defense of Nyame.

Jones and Goldbourne have provided conflicting versions concerning Mercado's second visit to the Mental Health Unit the evening before he hung himself.  Goldbourne claims that Jones was present when Mercado arrived at the Mental Health Unit that evening, that he gave Mercado's referral to Jones and that Jones decided to schedule an appointment for him for the following day (Interdepartmental Memorandum from Goldbourne to Warden G. McLaughlin, dated December 20, 2007, attached to Stoll Decl. as Ex. 30).  Jones, however, contends that she was not present when Mercado arrived that evening and that Goldbourne made the deci-sion to send Mercado away because Goldbourne had a problem with Mercado's attitude (Jones Dep. at 172:2-173:19).

The versions of events provided by Goldbourne and Jones are plainly in conflict.  Goldbourne's version suggests that Mercado was not seen as a result of Jones' unilateral decision. Jones' version suggests that it was Goldbourne who unilaterally decided to send Mercado away.  In short, Goldbourne and Jones each offer versions that exonerate themselves and lay the blame for Mercado's lack of treatment on the other.

Defendants first argue that these conflicting accounts are inconsequential because "there was no objective evidence whatever to indicate suicidal tendencies" (Def's Mem. in Opp. at 25).  Although defendants may ultimately prevail on this issue,

17

their argument cannot be regarded as conclusive at this time because it is contradicted by the initial order issued by Judge Lopez, as well as the observations of Dr. Park and the corrections officers who monitored Mercado in his dorm. Thus, I cannot conclude at this time that a fact-finder will never need to reach the individual defenses asserted by Goldbourne and Jones.

Defendants next claim that these potential conflicts are largely hypothetical and immaterial. They argue that there is no conflict since all plan to assert a unified defense that no party is liable because none acted with deliberate indifference. Defendants liken this case to Flaherty v. Filardi, 03 Civ. 2167 (LTS)(HBP), 2004 WL 1488213 at *3 (S.D.N.Y. July 1, 2004) (Pitman, M.J.), in which jointly represented defendants' "unified defense" eliminated any potential conflict. Flaherty v. Filardi, supra, 2004 WL 1488213 at *3. However, unlike Flaherty, if any degree of wrongdoing occurred here, Goldbourne and Jones each point the finger at each other. While it may be true that their primary, unified defense may prevail, the aforementioned defenses remain as secondary ones which Goldbourne and Jones cannot assert if they are jointly represented.

Defendants also point to Rodick v. City of Schenectady, 1 F.3d 1341 (2d Cir. 1993), and Patterson v. Balsamico, supra, 440 F.3d at 115, in support of their unified defense argument.

18

These cases are inapplicable.  The Court in Rodick conducted a retrospective analysis of potentially conflicted counsel to determine that "trial counsel advanced and argued all possible defenses available to them."  Rodick v. City of Schenectady, supra, 1 F.3d at 1350.  Similarly, in Patterson, the court found that counsel in question "neither advanced an argument contrary to Balsamico's interest . . . nor failed to present a valid defense for reasons of loyalty to his other client."  Patterson v. Balsamico, supra, 440 F.3d at 115.  Because I am conducting a prospective analysis, I do not have the advantage of the closed record that the Court of Appeals had in both of these cases.  Prospectively, it seems impossible for defense counsel here to advance all possible defenses that these individual defendants may have for the reasons outlined above.  Therefore, this case does not readily resemble Rodick and Patterson.[3]

Thus, because (1) Jones has defenses that conflict with Nyame's and Goldbourne's and (2) Jones, Nyame and Goldbourne have not waived their right to assert conflicting defenses, I conclude that, in the absence of a waiver, Corporation Counsel cannot

---

[3]Defendants also rely on Moskowitz v. Coscette, 51 F. App'x 73 (2d Cir. N.Y. 2002).  This case is similarly inapplicable because the Court was conducting a retrospective analysis while using the standard associated with a Rule 60(b) motion, not a motion to disqualify.

represent Jones while it is simultaneously overseeing the defense of Nyame and Goldbourne.

Plaintiffs contend that if Corporation Counsel is disqualified from representing Jones, both Corporation Counsel and HPMB should be precluded from representing the City, Goldbourne, Nyame and PHS (Pl's Mem. at 25).  Plaintiffs rely on Rule 1.9 of the New York Rules of Professional Conduct to dis-qualify defense counsel based on their prior representation of Jones.  Rule 1.9 states, in pertinent part:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing . . .
>
> \*      \*      \*
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or
>>
>> (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client.

22 N.Y.C.R.R. § 1200.1.9 (2009).

20

In <u>Evans v. Artek Sys. Corp.</u>, <u>supra</u>, 715 F.2d at 791, the Court of Appeals developed a test for disqualification under Rule 1.9, finding that disqualification is appropriate if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Plaintiffs fail to meet the first prong of this test.  Plaintiffs are the moving party, not Jones nor any other former client of defense counsel.  Since this element is not satisfied, it is not necessary to reach the second and third prongs.

C.  <u>Waiver</u>

Because there is a conflict of interest in defense counsel's representation of Goldbourne, Nyame and Jones, it is my responsibility to ensure that the affected parties fully appreciate their position.  <u>Dunton v. County of Suffolk</u>, <u>supra</u>, 729 F.2d at 908.  If defendants are adequately informed of the conflict and its potential ramifications, they may choose to waive the right to assert their conflicting defenses and pursue a unified defense, for then "permitting them to go forward with joint representation does not sufficiently increase the risk of trial

21

taint." <u>D.R.T. v. Universal City Studios, Inc.</u>, <u>supra</u>, 2003 WL 1948798 at *4; <u>see</u> <u>Vegetable Kingdom, Inc. v. Katzen</u>, 653 F. Supp. 917, 925 n.6 (N.D.N.Y. 1987)(observing that where the parties have "freely and intelligently" given consent to joint representation, the court "should refrain from paternalistically infringing on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been incontrovertibly compromised").

Jones, Nyame and Goldbourne have each submitted declarations to the Court purporting to waive any conflict of interest.  These declarations express a general understanding of the planned unified defense and the potential for conflict, but do not acknowledge and expressly agree to waive the personal defenses that they will forfeit as a result of this joint representation (Declaration of Jones, dated January 6, 2010 (Docket Item 75); Declaration of Goldbourne, dated December 31, 2009, attached to Def's Mem. in Opp. as Ex. 10; Declaration of Nyame, dated January 8, 2010, attached to Def's Mem. in Opp. as Ex. 11).  If Jones, Nyame and Goldbourne wish to continue with their current attorneys, they must provide the Court with declarations that expressly acknowledge and waive their personal defenses.

IV.  Conclusion

        Accordingly, for all the foregoing reasons, I find that
a conflict of interest exists in Corporation Counsel's concurrent
representation of Jones on the one hand and Nyame and Goldbourne
on the other.  Unless Jones, Nyame and Goldbourne all submit
affidavits waiving their rights to assert the contradictory
defenses described herein within 20 days, Corporation Counsel is
disqualified from representing Jones.  Alternatively, Corporation
Counsel can continue to represent Jones if, within 20 days, it
certifies to the Court that it no longer represents the other
defendants and has relinquished all oversight and control with
respect to the representation of the other defendants.

Dated:  New York, New York
        September 30, 2010

                                SO ORDERED

                                _____
                                HENRY PITMAN
                                United States Magistrate Judge

Copies transmitted to:

Andrew Stoll, Esq.
Stoll, Glickman & Bellina, LLP
71 Nevins Street
Brooklyn, New York  11217

Colleen Meenan, Esq.
Mennan and Associates LLC
Suite 502
64 Fulton Street
New York, New York  10038

Gillian C. Thomas, Esq.
Austa Devlin, Esq.
Heidell, Pittoni, Murphy & Bach, LLP (CT)
30 Oak Street
Stamford, Connecticut 06611

Paul Haberman, Esq.
Heidell, Pittoni, Murphy & Bach, LLP (NYC)
99 Park Avenue
New York, New York  10016

Mark W. Muschenheim, Esq.
Mordecai Newman, Esq.
Assistant Corporation Counsels
City of New York
100 Church Street
New York, New York  10007

Howard Eison, Esq.
Sullivan, Papain, Block, McGrath & Cannavo
18th Floor
120 Broadway, 18th Floor
New York, New York 10271